**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| CASSANDRA MUNOZ, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-50125 |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| CLEO COMMUNICATIONS, INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Cassandra Munoz ("Plaintiff") individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Cleo Communications, Inc. ("Cleo" of "Defendant"). Plaintiff alleges the following upon information and belief based on and upon the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

**INTRODUCTION**

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons impacted by a data breach that Chicago Public Schools publicly announced on March 7, 2025 (the "Data Breach" or the "Breach").

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard PII that was entrusted to them, and their accompanying responsibility to store and transfer that information.

3. This is a "hub-and-spoke" data breach, where Cleo, the "hub," processes and maintains data for numerous customers, the "spokes."

4. Defendant Cleo is a software platform that helps businesses manage their supply

chain integration and provides tools to businesses for automating, integrating, and monitoring business-to-business transactions, among other services. In the course of providing these services, Cleo stores an enormous amount of PII and generates millions of dollars of revenue on a yearly basis.

5.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiff and Class Members, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access.

6.      In late 2024, Defendant Cleo was the victim of a cyberattack on a server used to store data on current and former Chicago Public Schools students.[1] On February 8, 2025, Chicago Public Schools, one of the "spokes" in this data breach, learned that student data had been inappropriately accessed during the Data Breach.[2]

7.      In February 2025, the Russia-linked ransomware group Cl0p took responsibility for a ransomware attack waged against Cleo.[3] Cl0p was purportedly able to exploit a known vulnerability in Cleo's systems and gain access to and exfiltrate the PII of a yet unknown number of individuals stored by Cleo's customers, including Chicago Public Schools, on Cleo's systems and platform.[4]

8.      Cl0p has since listed the affected companies on their leak site on the dark web, claiming that the listed companies have "ignored" the notice and have not yet contacted the gang

---

[1] Exhibit 1, Cassandra Munoz Notice Letter.
[2] *Id.*
[3] Paulina Okunyte, *Chicago schools join IT giant in Cl0p's attack spree,* CYBERNEWS (February 13, 2025) https://cybernews.com/cybercrime/chicago-schools-dxc-technology-cl0p-ransomware/https://cybernews.com/cybercrime/chicago-schools-dxc-technology-cl0p-ransomware/ (last visited March 19, 2025).
[4] *Id.*

to pay ransom.[5]

9.     Upon information and belief, the following types of Personally Identifiable Information ("PII"[6]) may have been compromised as a result of the Data Breach involving Chicago Public Schools: name, date of birth, gender, Chicago Public Schools student ID number (for students enrolled in the federal Medicaid program, students' Medicaid ID number and dates of program eligibility were also compromised).[7]

10.    On March 7, 2025, Chicago Public Schools issued a public notice about the Data Breach and began sending notice letters to individuals impacted.[8]

11.    Defendant failed to take precautions designed to keep individuals' PII secure.

12.    Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the PII collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the PII, yet breached their duty by failing to implement or maintain adequate security practices.

13.    The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their PII and are subject to an increased risk of identity theft.

14.    Defendant failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information they maintained for Plaintiff and Class

---

[5] *Id.*

[6] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[7] Exhibit 1, Kameron Betton Notice Letter.

[8] *Breach Notifications*, CHICAGO PUBLIC SCHOOLS, https://www.cps.edu/about/policies/student-online-personal-protection-act/breach-notifications (last visited March 19, 2025).

Members, causing the exposure of Plaintiff's and Class Members' PII.

15. As a result of Defendant's inadequate digital security and notice process, Plaintiff and Class Members' PII was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their PII; the loss or diminished value of PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

16. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected PII using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

17. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence, negligence *per se*, and breach of implied contract.

18. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

### Plaintiff

19.     Plaintiff Cassandra Munoz is a resident of Chicago, Illinois. Plaintiff Munoz is an alumna of Chicago Public Schools. On March 10, 2025, Chicago Public Schools sent Plaintiff a notice letter informing her that her Private Information was impacted in the Data Breach. As a result of the Data Breach, Plaintiff has been forced to, and will continue to, invest significant time monitoring accounts to detect and reduce the consequences of likely identity fraud. As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm.

### Defendant

20.     Defendant Cleo Communications, Inc., is a privately held software company with its principal place of business in Rockford, Illinois.[9]

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred putative Class Members, and minimal diversity exists because many putative Class Members are citizens of a different state than Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

22.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business, and maintains its principal place of business in this District.

---

[9] *Contact us today,* CLEO, https://www.cleo.com/contact (last visited March 19, 2025).

23.     Venue is proper in these District under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background Regarding Cleo

24.     Cleo is a privately held software company founded in 1976. Cleo is best known for its ecosystem integration platform, Cleo Integration Cloud with RADAR. Cleo describes itself as "powering supply chains of the world's leading organizations" through its varied offerings of business-to-business integrations.[10]

25.     Each of Cleo's customers, including Chicago Public Schools, stores PII of their consumers, students, and/or employees on Cleo's platform through the use of Cleo's offered services and software.

26.     Cleo is well-aware of industry guidance and regulations that set standards for effective data security practices. Cleo advertises that it is "tested against industry standards."[11]

27.     Chicago Public Schools is the fourth largest school district in the United States, with a current enrollment of more than 320,00 students. Chicago Public Schools is a Cleo customer and stores the PII of current and former students on Cleo's software, network, and/or products, and utilized Cleo's managed file transfer ("MFT") services.

---

[10]*Powering supply chains of the world's leading organizations,* CLEO, https://engage.cleo.com/ (last visited March 19, 2025).
[11] *Securely connect to your trading partners using top-rated integration software,* CLEO, https://www.cleo.com/solutions/integration-connectors/security-protocols (last visited March 19, 2025).

28.     In the course of their ordinary business practices, Defendant obtains, collects, uses, and derives a benefit from the PII of Plaintiff and Class Members. Defendant uses the PII they collect to provide services, making a profit therefrom. Defendant would not be able to obtain revenue if not for the acceptance and use of Plaintiff's and the Class's PII.

29.     By collecting Plaintiff's and the Class's PII, either directly or indirectly, Defendant assumed legal and equitable duties to Plaintiff and the Class to protect and safeguard their PII from unauthorized access and intrusion.

30.     Plaintiff's and Class Members' PII was accessed and stolen from Defendant's inadequately secured data systems in a preventable Data Breach orchestrated by Cl0p.

**A.  The Data Breach**

31.     In late 2024, Cleo was the victim of a cyberattack on a server used to store PII of current and former Chicago Public Schools students.[12] On February 8, 2025, Chicago Public Schools learned that student data had been inappropriately accessed during the Data Breach.[13]

32.     In February 2025, the Russia-linked ransomware group Cl0p took responsibility for a ransomware attack waged against Cleo.[14] Cl0p was purportedly able to exploit a known vulnerability in Cleo's systems and gain access to and exfiltrate the PII of a yet unknown number of individuals stored by Cleo's customers on Cleo's systems and platform.[15]

---

[12] Exhibit 1, Cassandra Munoz Notice Letter.
[13] *Id.*
[14] Paulina Okunyte, *Chicago schools join IT giant in Cl0p's attack spree* (February 13, 2025) https://cybernews.com/cybercrime/chicago-schools-dxc-technology-cl0p-ransomware/ (last visited March 19, 2025).
[15] *Id.*

33.     Cl0p has since listed the affected companies on their leak site on the dark web, claiming that the listed companies have "ignored" the notice and have not yet contacted the gang to pay ransom.[16]

34.     Upon information and belief, the following types of PII may have been compromised as a result of the Data Breach involving Chicago Public Schools: name, date of birth, gender, Chicago Public Schools student ID number (for students enrolled in the federal Medicaid program, students' Medicaid ID number and dates of program eligibility were also compromised).[17]

35.     On March 7, 2025, Chicago Public Schools issued a public notice about the Data Breach and began sending notice letters to individuals impacted.[18]

36.     Plaintiff's claims arise from Defendant's failure to safeguard her PII.

37.     Defendant failed to take precautions designed to keep individuals' PII secure.

38.     While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive PII of Plaintiff and Class Members.

39.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**B.  Defendant's Failure to Prevent, Identify and Timely Report the Data Breach**

40.     Chicago Public Schools admit that an unauthorized third-party accessed Cleo's IT Network and obtained sensitive PII.

---

[16] *Id.*
[17] Exhibit 1, Kameron Betton Notice Letter.
[18] *Breach Notifications,* CHICAGO PUBLIC SCHOOLS, https://www.cps.edu/about/policies/student-online-personal-protection-act/breach-notifications (last visited March 19, 2025).

41.     Defendant failed to take adequate measures to protect computer systems against unauthorized access.

42.     The PII that Defendant allowed to be exposed in the Data Breach is the type of PII that Defendant knew or should have known would be the target of cyberattacks.

43.     Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[19] Defendant failed to disclose that their systems and security practices were inadequate to reasonably safeguard individuals PII.

44.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[20] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

45.     Here, individuals impacted did not receive notice until more than one month after the Data Breach occurred.

**C.  The Harm Caused by the Data Breach Now and Going Forward**

46.     Victims of data breaches are susceptible to becoming victims of identity theft.

47.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges

---

[19] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016) https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited March 19, 2025).

[20] *Id.*

9

on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[21]

48.     The type of data that was accessed and compromised here can be used to perpetrate fraud and identity theft.

49.     Plaintiff and Class members face a substantial risk of identity theft given that their PII was compromised in the Data Breach. Once PII is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

50.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

51.     When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[22]

52.     For example, in one recent case unsealed by the U.S. Department of Justice, an Illinois man led a group of criminals in marketing almost 50,000 stolen payment cards on dark web marketplaces, generating at least $1 million in cryptocurrency.[23]

---

[21] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness  (last visited March 19, 2025).

[22] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE, (December 28, 2020),    https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring    (last visited March 19, 2025).

[23] *Is Your Information for Sale on the Dark Web?*, NASDAQ (Feb. 26, 2024) https://verafin.com/2024/02/is-your-information-for-sale-on-the-dark-web/ (last visited March 19, 2024).

53.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, someone can purchase a full range of documents that will allow identity theft, including $500 for a high-quality U.S. driver's license, $25 for a hacked social media account, $110 for credit card information, and $150 for banking account information.[24]

54.     The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[25]

55.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[26]

56.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[27] Defendant did not rapidly report to Plaintiff and Class Members that their PII had been stolen, instead waiting more than a month to issue a notice of public disclosure.

---

[24] *Revealed – how much is personal information worth on the dark web?,* INSURANCEBUSINESS (May 1, 2023) https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx (last visited March 19, 2025).
[25] *Experts advise compliance not same as security,* RELIAS MEDIA (May 1, 2015) https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (last visited March 19, 2025).
[26] *2019 Internet Crime Report Released,* FBI (February 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (last visited March 19, 2025).
[27] *Id.*

57.     As a result of the Data Breach, the PII of Plaintiff and Class Members have been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

58.     In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

59.     Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (b) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff and Class Members' PII; (c) failing to take standard and

12

reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

60.     The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ALLEGATIONS

61.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

**Cleo Class**. All individuals residing in the United States whose PII was identified as compromised in the Data Breach.

**Chicago Public Schools Class**. All current and former Chicago Public Schools students residing in the United States whose data was accessed or stolen in the Data Breach.

62.     Specifically excluded from the Class are Defendant, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns,

or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

63. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

64. This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

65. Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of hundreds of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

66. Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her PII compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

67. Adequacy of Representation (Rule 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

68.   <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members is relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

69.   <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.   Whether Defendant's storage of Class Member's PII was done in a negligent manner;

d.   Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' PII;

e.   Whether Defendant's conduct was negligent;

f.   Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

g.   Whether Defendant took sufficient steps to secure individuals' PII;

h.   The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

70.   Information concerning Defendant's policies is available from Defendant's records.

71.   Plaintiff knows of no difficulty which will be encountered in the management of

this litigation which would preclude its maintenance as a class action.

72.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

**CAUSES OF ACTION**

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and All Class Members)**

73.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 24 through 60 as though fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the Class Members.

75.     Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

76.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and Class Members' PII.

77.     Defendant had, and continues to have, a duty to timely disclose that Plaintiff and Class Members' PII within their possession was compromised and precisely the types of information that were compromised.

78.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that their

systems and networks, and the personnel responsible for them, adequately protected individuals' PII.

79.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. Defendant were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

80.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

81.     Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' PII.

82.     The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and Class Members' PII;

b.  Failing to adequately monitor the security of their networks and systems; and

c.  Failing to periodically ensure that their computer systems and networks had plans in place to maintain reasonable data security safeguards.

83.     Defendant, through its actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' PII within Defendant's possession.

84.     Defendant, through its actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff and Class Members' PII.

85. Defendant, through its actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

86. Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Members' PII. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the PII they keep; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their networks' vulnerabilities; and failed to implement policies to correct security issues.

87. Defendant's failure to comply with applicable laws and regulations constitutes negligence.

88. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff and Class Members' PII would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

89. It was foreseeable that the failure to adequately safeguard Plaintiff and Class Members' PII would result in injuries to Plaintiff and Class Members.

90. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' PII to be compromised.

91. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

92. As a result of Defendant's failure to timely notify Plaintiff and Class Members that their PII had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

93. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

### COUNT II
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and All Class Members)

94. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 24 through 60 as though fully set forth herein.

95. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff and Class members' PII. Various FTC publications and orders also form the basis of Defendant's duty.

96. Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff and Class members' PII and not complying with

industry standards.

97.     Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

98.     Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

99.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class members.

100.    As a result of Defendant's negligence *per se*, Plaintiff and the other Class members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representatives of the Class and her counsel as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the laws referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)      For damages in amounts to be determined by the Court and/or jury;

(e)      An award of statutory damages or penalties to the extent available;

(f)      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

(g)      For pre-judgment interest on all amounts awarded;

(h)      For an order of restitution and all other forms of monetary relief; and

(i)      Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: March 19, 2025                 Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
Email: gklinger@milberg.com

Courtney E. Maccarone*
Mark S. Reich*
Mark Svensson*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: cmaccarone@zlk.com
Email: mreich@zlk.com
Email: msvensson@zlk.com

**pro hac vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*